CRAIN, Judge.
Defendant, Herman Montana (a/k/a “Poochie”), was charged with forcible rape, a violation of La.R.S. 14:42.1. After trial by jury» he was convicted as charged. Defendant was thereafter charged as and found to be a third felony habitual offender. He was sentenced accordingly to forty years imprisonment at hard labor, twenty-five of which are to be served without benefit of probation, parole, or suspension of sentence. Defendant appeals his conviction and sentence, advancing eight assignments of error for our review.
FACTS
On the evening of March 7, 1987, the victim and two girlfriends, Jennifer Garrett and Maria Roberts, decided to go out to various nightclubs. Leon Smith, the victim’s ex-boyfriend and the father of two of her children, was in her home to babysit the children when the victim left with her friends. After changing her clothing at the home of Maria Roberts, the victim and her friends went to the Pondersosa Club in Covington at approximately 12:30 a.m. Defendant made several passes at the victim while at the Ponderosa. He told the victim that she was to leave the club with him. Despite the victim’s repeated refusals, defendant was not dissuaded. He waited for the victim and her companions near the club exit and followed them into the parking lot. (The group left the club at approximately 3:30 a.m.) Once again, defendant told the victim that she was to go home with him. The victim then asked her friends to flank her because defendant “was acting funny” and told her he would shoot her should she walk away from him. *985 At that time, defendant said, “if you make one more step, I’ll hit you just like that.” The victim and her friends agreed to accompany defendant to Shoney’s, for breakfast, in order to placate him. Jennifer, Maria and “Thor” were to follow defendant and the victim. When they arrived at Sho-ney’s, it was evident the restaurant was closed. Jennifer and Maria drove up to defendant’s car to tell him that perhaps they should go to the Waffle House. Defendant drove off with the victim in the car, leaving her friends behind.
The victim testified that she persuaded defendant to stop at the old Billups gas station (the new Charter Pood Store) so that she could use the bathroom. The victim planned to escape through a bathroom window, but the bathroom had no window. She and defendant walked into the convenience store, and the victim asked defendant to purchase a pack of gum for her in order to distract him and give herself an opportunity to get the cashier’s attention and alert him as to her plight. The victim abandoned her plan as she was unable to effectively communicate with the cashier without risking detection by defendant.
Defendant’s next stop was the Star Motel in Lacombe. He warned the victim “not to do anything stupid” and parked the car so that he could scrutinize the victim’s every move as he made arrangements for a room. Once inside the motel room, defendant attacked the victim. She testified that “he was all over me” and “licked me from top to bottom and then he started having sex with me.” The victim testified that she repeatedly screamed and tried to convince defendant to release her. She stated: “I know I was trying to get him off of me. It wasn’t like I wanted it to happen.”
The owner of the Star Motel, Ursula Weathers, testified that defendant checked-in at approximately 4:00 a.m. She stated that at approximately 5:00 a.m. Leon Smith arrived at the motel, knocked on motel room doors, and created a serious disturbance. The motel owner threatened to telephone the police.
Leon Smith testified that, soon thereafter, defendant walked out of a motel room and started toward his car. Defendant held a weapon in his hand. Smith ran toward defendant as defendant pointed to his empty motel room and said “she’s not there” and then drove off in his yellow Gran Prix. Smith testified that he then saw the victim walking out from around the back of the motel and that she appeared to be hysterical. The victim allegedly said, “He’s going to get me.”
Defendant was apprehended approximately one hundred yards from the motel by police officers, after he had driven his vehicle into a drainage ditch. Police officers fished a loaded gun out from underneath the car. They additionally recovered a pair of yellow earrings and blue panti-hose belonging to the victim. The earrings and three bullets were in the defendant’s possession when he was apprehended by the police.
Detective Otto Stubbs testified that he collected evidence at the crime scene. He stated that he observed a window screen on the motel bed. The glass in the bedroom window had been broken out. Deputy David Bel transported the victim to the Slidell Memorial Hospital for medical treatment.
Defendant’s theory of the case is that consensual sexual intercourse took place and that the “victim” was caught in the act by her boyfriend Leon Smith. Defendant submits that the victim concocted the rape to save herself from her boyfriend’s wrath. Defense witnesses contradicted the testimony of state witnesses on almost every issue of fact.
Ursula Weathers testified that she would have heard the victim’s screams, had she in fact been screaming, because she has an intercom in her room, and the walls are paper-thin. Ms. Weathers stated that defendant rented room # 2 and that the folks in room # 1 did not complain of hearing screams or other noises. She additionally testified that defendant was a “regular” at her motel.
Evelyn Landon testified that she had seen the victim in defendant’s company on two separate occasions. Ricky Palmer testified that he knows defendant and the *986 victim and that he has seen them together, as a couple, on three separate occasions. He stated that the victim indicated to him her desire to leave the Ponderosa with defendant and that she appeared to be intoxicated. Palmer testified that defendant told him he was “going to make love” and would return to the club soon.
Delbert Fleming testified that the victim told him to ask defendant to come speak with her. Fleming said that defendant walked outside of the club to determine what the victim wished to say to him. Fleming claims to have been in the back seat of defendant’s car when the victim was in the front seat hugging defendant. He testified that defendant and the victim drove him to his home in Lacombe and dropped him off at approximately 4:45 a.m.'
Paulette Montana, defendant’s sister, testified that, two weeks prior to this incident, defendant paid her to cut the victim’s hair.
ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, defendant contends that the trial court improperly restricted his cross-examination of a state witness. Defendant claims that he should have been permitted to review, albeit for the second or third time, the sequence of events of the evening of March 7 and early morning of March 8, 1987, with state witness Jennifer Garrett. Defendant asserts that the testimony was crucial to his defense.
The record reflects that defense counsel was attempting to elicit repetitive testimony in an obvious attempt to accentuate the discrepancies in Ms. Garrett’s testimony and that of other state witnesses.
La.R.S. 15:275 vests the trial court with “a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross.” A conviction will not be reversed due to the trial court’s control of the examination of a witness unless an abuse of discretion is shown which affects the substantial rights of the accused. La.C.Cr.P. art. 921; see State v. Chapman, 410 So.2d 689, 697 (La.1981).
In the instant case, defense counsel successfully elicited testimony concerning the sequence of events from Ms. Garrett. Defendant has failed to prove any prejudice as a result of the trial court’s action. We find no abuse of discretion on the part of the trial court.
This assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
In assignment of error number two, defendant contends the trial court permitted the state to engage in improper closing argument which alluded to the fact that defendant did not testify at trial. In assignment of error number three, defendant contends a new trial should have been granted due to the state’s improper closing argument.
The language defendant considers objectionable was spoken by the prosecutor during closing argument:
It wasn’t like I wanted it to happen. Do you remember [the victim] saying that? Did anyone refute that? She sat in this chair. No evidence was ever presented to the contrary.
Defendant contends this statement is a prohibited, indirect reference to his failure to testify at trial. He urges that the only portion of the state’s case which was not refuted is the part where only the defendant and the victim were present. However, defendant did not voice an objection during trial to the prosecutor’s closing argument.
A defendant must object to an alleged error at the time of its commission in order to preserve the issue for subsequent review. When there is no objection of record, the error is considered waived. Additionally, it is well settled that defense counsel must state the basis for his objection when making it and point out the specific error which the trial court is making. La.C.Cr.P. art. 841; see State v. Brown, 481 So.2d 679, 686-87 (La.App. 1st Cir.1985), writ denied, 486 So.2d 747 (La. *987 1986). The grounds of the objection must be sufficiently brought to the attention of the trial judge to allow him the opportunity to make the proper ruling and correct the claimed prejudice. State v. Harris, 414 So.2d 325, 327 (La.1982). A defendant is limited on appeal to grounds for objection articulated at trial.
Nonetheless, we have elected to address defendant’s assigned errors. In this case, it does not appear that the prosecutor intended to emphasize defendant’s failure to take the stand. See State v. Smith, 433 So.2d 688, 697 (La.1983). We do not find the comment to be impermissible. Similar statements to the effect that the state’s case is uncontroverted have been frequently upheld. See, e.g., State v. Jackson, 454 So.2d 116, 118 (La.1984); State v. Sims, 346 So.2d 664, 669 (La.1977); State v. Reed, 284 So.2d 574, 576 (La.1973); State v. Hilbum, 512 So.2d 497, 505 (La.App. 1st Cir.), writ denied, 515 So.2d 444 (La.1987). The comment does not emphasize defendant’s failure to take the stand at trial.
The record does not indicate an erroneous denial of defendant’s motion for a new trial. Consequently, these assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, defendant contends the trial court erroneously denied his motion for a new trial based upon newly discovered evidence. Defendant contends that, had he known Ms. Garrett and Ms. Roberts would testify that they reported the victim’s abduction at gunpoint to the police, he would have subpoenaed the two officers to testify at trial. Defendant claims that he was surprised by the testimony of Ms. Garrett and Ms. Roberts and that he was not prepared to refute their testimony.
The State submits that although the two St. Tammany Parish deputies could have rebutted some portion of the testimony at trial, there is no indication that the testimony of Ms. Garret and Ms. Roberts was not discoverable prior to trial.
The burden is on a defendant to show that the new evidence was not discoverable prior to or during trial and that, if the new evidence had been introduced at trial, it probably would have caused the trier of fact to reach a different verdict. See State v. Spears, 504 So.2d 974, 979 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987). Defendant’s general allegation of surprise is insufficient to prove that defendant could not have discovered the new evidence with due diligence prior to trial, and that it probably would have caused the trier of fact to reach a different verdict. See La.C.Cr.P. art. 851(3).
This assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS FIVE AND SIX
By means of these two assignments of error, defendant challenges the sufficiency of the evidence to sustain his conviction. Defendant contends that the trial court erroneously denied his motion for a new trial based on the insufficiency of the evidence.[1] Defendant claims the evidence does not prove that the sexual intercourse was without the lawful consent of the victim.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
*988 In order to convict a defendant of the crime of forcible rape, the state must prove that the defendant committed a rape
where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
See La.R.S. 14:42.1.
The victim testified that she was abducted at gunpoint by defendant and that he threatened her with his gun. Evidence of record indicates that defendant struck the victim on the face. She testified that defendant is much larger than she and that he overpowered her. The victim further testified that defendant forced her to submit to sexual intercourse against her will. She stated that he ordered her to remove her pantihose and that she removed one of her earrings because she feared the ear would be split during her struggle with defendant. The victim’s testimony was positive about sexual penetration and her fear of impending physical violence.
Jennifer Garrett testified that defendant had threatened the victim when at the Ponderosa and that the victim was afraid. Defendant ordered the victim “to go,” and Ms. Garrett stated that she touched defendant’s side and could feel what she thought was a gun. Ms. Garrett stated that, after defendant left them behind at the Shoney’s parking lot, she, Thor and Ms. Roberts reported the victim’s abduction to Deputy Mike Foster in Lacombe. Ms. Garrett and Ms. Roberts went to the Slidell sheriff’s office and reported the abduction again. Ms. Roberts’ testimony essentially corroborated Ms. Garrett’s testimony. Ms. Roberts testified that the victim did not want defendant around her or bothering her.
Defendant submits that he and the victim knew each other and that she “wanted” him. He claims that the following evidence casts a reasonable doubt as to whether or not the charged offense was actually committed: the victim’s pantihose were not tom; the victim’s earrings were not torn from her ears; the motel owner did not hear the victim scream; the victim remained in the car while defendant was inside the motel office renting a room; it is physically impossible for the five foot, one inch tall victim to have climbed or dived out of the bathroom window unassisted; defendant and the victim were in the motel room for approximately one hour prior to the alleged rape. Defendant additionally urges that Ms. Garrett’s testimony, to the effect that two deputies were unconcerned about the victim’s alleged abduction, is improbable. Defendant submits that there is no medical testimony to corroborate the victim’s allegation of rape. The gist of defendant’s arguments is that he and the victim were on a date and that the rape charge was prompted by the victim when she realized her boyfriend, Leon Smith was aware that she was in the motel with the defendant.
Defendant’s arguments have no merit. Although he correctly asserts that the state did not introduce corroborating medical, scientific or physical evidence, the testimony of the victim is sufficient to establish the elements of the offense. State v. Walder, 504 So.2d 991, 995 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). Moreover, although the victim may not have suffered extensive physical injury, this fact does not negate the possibility that a forcible rape occurred. A victim need not suffer physical harm to constitute the degree of physical force or threat of physical violence necessary to support a conviction of forcible rape. See generally, State v. Wallace, 484 So.2d 908, 911 (La. App. 1st Cir.), writ denied, 489 So.2d 244 (La.1986).
Additionally, the guilty verdict indicates that the jury believed the testimony of the victim and rejected the testimony of defendant’s friends and acquaintances. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its suffi *989 ciency. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). The record reflects evidence sufficient to find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the state proved beyond a reasonable doubt that defendant was guilty of forcible rape.
This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER SEVEN
By means of this assignment of error, defendant contends the trial court erroneously imposed an excessive sentence.
Pursuant to La.R.S. 14:42.1 and La.R.S. 15:529.1, defendant’s sentencing exposure, as a third felony offender, was from a minimum period of incarceration at hard labor of twenty years to a maximum sentence of imprisonment at hard labor for eighty years. The instant sentence was for forty years at hard labor, twenty-five of which are to be served without benefit of probation, parole or suspension of sentence.
A review of the individual ex-cessiveness should consider the circumstances of the crime and the trial court’s stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986). Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). The trial court has wide discretion in the imposition of sentences and a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Johnson, 486 So.2d 853, 854 (La.App. 1st Cir.1986).
The record reflects the trial court found many aggravating circumstances. The presentence investigation report indicates that defendant had an extensive criminal record. Referring to the instant conviction, the trial court concluded that a lesser sentence would deprecate the seriousness of this offense. Finally, the trial court noted that defendant was a poor parole risk and a likely recidivist. The trial court noted that this was a very serious offense and that there was “no hope” for the defendant.
We find no abuse of the trial court’s sentencing discretion. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant designated all error discoverable by an inspection of the pleadings and proceedings in this assignment of error. However, he does not urge that a particular error was committed. This Court routinely reviews every criminal appeal record for patent error. See La.C.Cr.P. art. 920. Our inspection of the instant record does not reveal the existence of such error.
The conviction and sentence of the defendant are affirmed.
AFFIRMED.

. We note at the outset that the proper procedural vehicle for contesting the issue of the sufficiency of the evidence is by a motion for a post-verdict judgment of acquittal. La.C.Cr.P. art. 821; State v. Britt, 510 So.2d 670, 672 (La.App. 1st Cir. 1987). Despite defendant’s failure to proceed properly, a reviewing court must consider the evidence when briefed pursuant to an assignment of error, to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).