721 So.2d 1084 (1998)
STATE of Louisiana
v.
Jeromy SAVARIO.
No. 97 KA 2614
Court of Appeal of Louisiana, First Circuit.
November 6, 1998.
*1085 Donald D. Candell, Assistant District Attorney, Gonzales, for Appellee State of Louisiana.
Phyllis E. Mann, Alexandria, for Defendant/Appellant Jeromy Savario.
Before SHORTESS, C.J., and CARTER and WHIPPLE, JJ.
CARTER, J.
The defendant, Jeromy Savario,[1] was charged by bill of information with one count of forcible rape, a violation of LSA-R.S. 14:42.1, and pled not guilty. After a jury trial, he was found guilty as charged. He was sentenced to fifteen years at hard labor, five years of which was to be served without benefit of probation, parole, or suspension of sentence. A motion for reconsideration of sentence was denied. Defendant now appeals, with two assignments of error.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number 1, the defendant contends the evidence was insufficient to support the forcible rape guilty verdict returned against him.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *1086 any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821 B; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
LSA-R.S. 14:41 provides:
A. Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
. . . . .
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
LSA-R.S. 14:42.1, at the time of the offense,[2] provided:
A. Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

. . . . .
At trial in the instant case, the victim testified that at approximately 12:00 a.m., on July 20, 1993, she decided to run away from home. She left her home, which did not have a telephone, and walked about three miles to use the pay phone at a local businessVeillon's. The victim safely reached the pay phone and called a girlfriend who lived near someone who was supposed to give the victim a ride.
While the victim was talking to her girlfriend on the telephone, the assailant approached her. The victim exclaimed, "Oh, God, a headbanger." The victim described the assailant as a "headbanger" because of his appearance. The assailant was wearing a "Metallica" shirt, black jeans, and had shoulder-length hair. The victim told her friend on the telephone, that she (the victim) would go back to Joe Boy Road, to "2-Zack's" house, to see if he would "bring" her to Baton Rouge. The assailant heard the victim mention "2-Zack" and said, "Well, I know 2-Zack," do you think he would "bring me to Gonzales." The victim told the assailant that he would have to ask "2-Zack." The assailant asked the victim whether he could walk with her, and she responded, "Yes, I guess." Initially, the assailant asked the victim what her name was and what school she went to. However, soon he began commenting upon how dark and long the road was.
After the assailant and the victim passed a bridge, he got behind her, put his arm around her neck, and told her that he did not want to hurt her, all he wanted to do was have sex with her, and that he had a gun in his pocket. The victim "kept telling" the assailant "no" and that she "just wanted to get to 2-Zack's house." The assailant dragged the victim into a vacant lot, undressed her, and pulled his clothes down. The assailant "kept saying that he had a gun and that if he pulled it out he was going to use it." The victim testified that she believed the assailant.
After he pulled off the victim's clothes, the assailant climbed on top of the victim and began having sexual intercourse with her. She struggled. He tried to kiss her, but she bit his tongue. She cried and tried to scream, but he covered her mouth. He started "reaching for the gun," stating "Where's my gun?"
After the attack, the victim got dressed, and the assailant "kept asking [her] if [she] was going to call the cops." The victim "kept telling [the assailant] `No,' just to get out of there." The assailant said he was sorry, walked a short distance with the victim, and then ran away, stating that he "didn't know 2-Zack." The victim never saw the assailant's alleged weapon.
The State specifically asked the victim whether she thought that even if she struggled and struggled and struggled, the assailant would still rape her, and she responded affirmatively. The victim identified the defendant in court as the assailant. On redirect examination, the State asked the victim *1087 if she thought she would "get shot" if she did not do as demanded, and she responded affirmatively. On cross-examination, defense counsel asked the victim why she had not scratched her assailant, and she answered, "Because he told me he had a gun. I didn't want him to blow my head off."
Danielle Decareaux, the victim's girlfriend, testified that she heard from the victim approximately an hour to an hour-and-a-half after she called from Veillon's. The victim "was very upset, very emotional, like something had just happened that she really didn't want to discuss over the telephone."
James Martin, a/k/a "2-Zack," testified that the victim came to his door during the early morning hours of July 20, 1993, reported being raped, and told him to call her friend in Baton Rouge. When asked to describe the victim's physical or emotional appearance at the time he saw her, Martin responded that she was "crying, upset, and she wasyou know, I could tell, you know, that something was real, you know, wrong with her."
The State and the defense stipulated that DNA testing of seminal fluid recovered from the victim pursuant to a rape examination was consistent with the DNA profile of the defendant.
The defendant testified in his own defense. His version of the incident was that when he walked up to the victim on the telephone, she told him that she had run away from home. He claimed that she asked him whether he had a telephone, and he told her that he was staying at his brother's house and she could use the telephone over there. Defendant testified that the victim went with him to his brother's house and on the way he asked her if she smoked crack cocaine. He claimed that she responded affirmatively and asked him if he had any. Defendant testified that that when he answered affirmatively, the victim asked whether he would smoke the cocaine with her. Defendant claimed that the victim engaged in consensual sex with him in exchange for his promise to let her have some of his cocaine. Defendant also testified that he never had any cocaine, and that when he told the victim this, after they had had sex, she "started hollering" at him, so he pushed her out of his brother's door. He claimed that the victim was "real mad," crying, and threatened to get someone to "beat [his] butt."
The defense also presented testimony from the defendant's stepbrother, Micha Pagan, who owned a trailer three or four blocks from Veillon's. He claimed to have been home on the night in question. He also claimed that the defendant was at home all night. He answered negatively when defense counsel asked whether the defendant had left for a while or whether he had left for a while that night. He made no reference to seeing or hearing the victim.
The defendant argues that the State failed to establish beyond a reasonable doubt that the victim reasonably believed resistance would not prevent the act of sexual intercourse. He relies upon the fact that the victim never saw his alleged weapon, citing, State v. Powell, 438 So.2d 1306, 1308 (La. App. 3rd Cir.), writ denied, 443 So.2d 585 (La.1983).
In Powell, our brethren of the Third Circuit were presented the issue of whether or not the evidence against the defendant was sufficient to support his conviction of forcible rape under the following facts:
Weeks [the victim] testified that she entered defendant's car after he agreed to bring her to her cousin's residence located nearby. The defendant then allegedly brought Weeks to a secluded area and threatened to kill her when she refused to have sexual intercourse with him. Weeks stated that defendant slapped her in the face three or four times while threatening to kill her. He allegedly threatened to use a weapon which, he had indicated, was under the seat of the car. Weeks admitted that she never saw the weapon or an object of any type which defendant threatened to kill her with. Following these incidents the victim testified that they each removed their own pants and defendant had intercourse with her on the front seat of the car. Thereafter, defendant brought Weeks to where she initially approached him that evening and the victim sought *1088 help from nearby friends who in turn contacted the police.
State v. Powell, 438 So.2d at 1307.
A two judge majority of the Third Circuit held that the above testimony, which the jury obviously believed since it returned a guilty verdict, was "insufficient to convince a reasonable fact finder beyond a reasonable doubt that the victim was prevented from resisting the act by threats of force or physical violence under the circumstances." State v. Powell, 438 So.2d at 1308. The majority reasoned, "There was no showing, however, of resistance on the part of the victim and very little evidence that she was prevented from resisting by force or threats of physical violence under the circumstances." State v. Powell, 438 So.2d at 1308. However, the dissenting judge stated as follows:
Forcible rape falls squarely between aggravated rape and sexual battery. In forcible rape the victim is not required to actually resist. It is necessary only that the victim be prevented from resisting either from (1) force or (2) threats of physical violence justifying the victim in believing that resistance will not prevent the rape. All that is required is a reasonable belief. In this conviction it should be noted that, if defendant had actually produced a dangerous weapon from under the automobile seat, he would most certainly have been guilty of aggravated rape.
Under the circumstances, and comparing the varying elements of the crimes of aggravated rape, forcible rape and sexual battery, I believe the jury could have reasonably concluded that the victim in this case was prevented from resisting the act of rape because of defendant's threats to kill her if she did not cooperate and submit combined with his statement that he had something under the seat with which he could kill her. The jury could reasonably have concluded that the victim did believe, and believed reasonably, that resistance would not prevent rape. This is particularly so when the jury's vote of ten to two is measured against the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The victim in this case stated that she submitted because the defendant threatened to kill her if she did not. Although she did not state in so many words that she did not resist because she believed that resistance would not prevent the rape, that is the clear meaning of her testimony. If that meaning is not given to her testimony, it is tantamount to requiring a person threatened with rape to either be faced with a dangerous weapon or to resist to the utmost and, in either case, subject themselves to the possibility of great physical harm or death. This is resistance in the context of aggravated rape. Forcible rape requires less.
The jury believed the victim. Believing that, they were entitled to believe her failure to resist or attempt escape was prevented because of the threat of being killed and that her belief was reasonable. I would affirm the conviction of forcible rape.
State v. Powell, 438 So.2d at 1310.
We agree with the dissent in Powell and find the reasoning of the majority to be unpersuasive. Further, the jurisprudence of this court is consistent with the views of the dissent in Powell, rather than the majority. See State v. Probst, 623 So.2d 79 (La.App. 1st Cir.), writ denied, 629 So.2d 1167 (La.1993); State v. Ferguson, 540 So.2d 1116, 1122-23 (La.App. 1st Cir.1989). We also note that other Louisiana appellate courts have rejected the reasoning of the majority in Powell. See State v. Burger, 531 So.2d 1163, 1167-68 (La.App. 4th Cir.1988), writ granted and case remanded for reconsideration, 541 So.2d 842(La.), conviction and sentence affirmed, 550 So.2d 1282 (La.App. 4th Cir.1989), writ denied, 556 So.2d 1276 (La.1990). Further, this court has previously held that a victim need not suffer physical harm to constitute the degree of physical force or threat of physical violence necessary to support a conviction of forcible rape. State v. Montana, 533 So.2d 983, 988 (La.App. 1st Cir.1988), writ denied, 541 So.2d 852 (La.1989). Accordingly, we decline to follow the reasoning of the majority in Powell.
In finding the defendant guilty as charged, the jury obviously accepted the testimony *1089 of the victim and rejected the testimony of the defendant. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989). The credibility of the testimony of a witness is a matter of the weight of the evidence. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d at 524; State v. Patterson, 540 So.2d at 518.
In the instant case, the victim's testimony established each and every element of the offense of forcible rape. The testimony of the victim alone is sufficient to prove the elements of an offense. State v. Ferguson, 540 So.2d at 1122. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Glynn, 94-0332, p. 32 (La.App. 1st Cir.4/7/95); 653 So.2d 1288, 1310, writ denied, 95-1153 (La.10/6/95); 661 So.2d 464.
After a thorough review of the record, we are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of the forcible rape of the victim. Accordingly, this assignment of error is without merit.

EXCESSIVE SENTENCE
In assignment of error number 2, the defendant contends the sentence imposed upon him by the trial court was unconstitutionally excessive.
Article I, Section 20, of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five years nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence. LSA-R.S. 14:42.1 B. The defendant was sentenced to fifteen years at hard labor, five years of which was to be served without benefit of probation, parole, or suspension of sentence.
In sentencing the defendant, the trial court recognized on the record that the defendant was a first felony offender, had suffered from childhood abuse, and was extremely youthful (sixteen years of age) at the time of the offense.
However, the court listed numerous additional considerations in support of the sentence it was imposing. The court expressed its belief that there was an undue risk that during the period of a suspended sentence or probation the defendant would commit another crime. See LSA-C.Cr.P. art. 894.1 A(1). The court also noted that the defendant committed the instant offense purely out of his desire for sexual gratification. The fact that the defendant decided to satisfy his sexual desires by raping a young girl on a dark lonely road while threatening her life suggests that he does indeed pose an undue risk for committing another crime. Additionally, the PSI contains a letter from the victim to the trial court pleading that the defendant receive the maximum incarceration and informing the court that, after his conviction, the defendant "turned and looked at me and my boyfriend and said `your (sic) dead.'" The court also noted that the defendant was in need of correctional treatment or a custodial *1090 environment that could be provided most effectively by his commitment to an institution. See LSA-C.Cr.P. art. 894.1 A(2). Again, the defendant's motivation for and commission of the instant offense fully support the trial court's conclusion.
The court further noted that a lesser sentence than the one that it was going to impose would deprecate the seriousness of the offense. See LSA-C.Cr.P. art. 894.1 A(3). The court enumerated the following aggravating factors: some deliberate cruelty was present in the instant offense, citing the physical force and threats used by the defendant; the victim was vulnerable, citing her youth (seventeen years of age at the time of the offense); the defendant knowingly inflicted bodily harm; the defendant used threats of and actual violence, citing the defendant's leading of the victim to believe he had a gun and his physically forcing her into the bushes; the offense resulted in physical injury to the victim and caused her to fear that she may have become infected with the AIDS virus. See LSA-C.Cr.P. art. 894.1 B(1), (2), (5), (6), and (9).
A thorough review of the record reveals no manifest abuse of discretion in the trial court's imposition of the sentence herein. The sentence was not grossly disproportionate to the severity of the offense. Therefore, the sentence was not unconstitutionally excessive. Accordingly, this assignment of error is without merit.

CONCLUSION
For the above reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] We take the spelling of defendant's name from defendant's pro se brief.
[2] LSA-R.S. 14:42.1 was amended by 1997 La. Acts No. 862, § 1.