STATE OF LOUISIANA
v.
CAROLYN ADAMS.
No. 2007 KA 0386.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
NOT DESIGNATED FOR PUBLICATION.
CAMILLE A. MORVANT, II, District Attorney, JOSEPH S. SOIGNET, Assistant District Attorney, Counsel for Appellee, State of Louisiana.
MARK D. PLAISANCE, Counsel for Defendant/Appellant, Carolyn Adams.
Before WHIPPLE, GUIDRY, AND HUGHES, JJ.
GUIDRY, J.
The defendant, Carolyn Adams, was charged by grand jury indictment with second-degree murder, a violation of La. R.S. 14:30.1. She pled not guilty. Following a trial by jury, the defendant was convicted as charged. The defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The defendant now appeals urging six assignments of error as follows:
1. Carolyn Adams shot Charles Armant, Jr. in self-defense. Because the State failed to rebut her self-defense claim beyond a reasonable doubt, the jury erred in finding her guilty of second degree murder.
2. A defendant has the constitutional right to face the jury with the appearance and dignity of a free and innocent person. Because Carolyn Adams was not permitted to have her hair styled as usual or allowed to wear makeup, she was denied that basic, constitutional right.
3. In a criminal trial, a jury verdict form must be signed by the foreperson. Because the record does not contain a signed verdict form, Carolyn Adams's conviction should be reversed.
4. An attorney's assistance is defective when the performance is deficient and when it prejudices the outcome of a trial. Because Carolyn Adams's attorney failed to present evidence to show that her sentence was excessive and failed to file a motion asking the court to reconsider its sentence, she was denied adequate representation.
5. A defendant found guilty, even of second degree murder, is entitled to credit for time served. The trial judge erred by not giving Carolyn Adams credit for time served when he sentenced her to life in prison.
6. An appeal court should review designated assignments of error and those errors discoverable by a mere inspection of the record.
Finding no merit in the assigned errors, we affirm the defendant's conviction and sentence.

FACTS
On July 5, 2005, at approximately 2:20 a.m., Millard Tabor, a truck driver for Taylor Propane and Gas (M.T. Trucking), traveled to a remote area off of La. Highway 307 near Kraemer, Louisiana to collect a load of crude oil. At this hour, there was no lighting on this road and the area was extremely dark. Upon arriving near the tank batteries at the end of the road, Tabor observed a green pickup truck parked in the otherwise deserted area. Tabor found the presence of a vehicle in this area puzzling. In an attempt to determine if anyone was inside the vehicle, Tabor sounded his vehicle's horn. There was no response. As Tabor approached the truck with a flashlight, he observed the lifeless body of a black male subsequently identified as the victim, Charles Armant, Jr., hanging from the opened passenger side door. The victim's upper body was slumped over the passenger seat. A handgun was observed in the opened glove compartment near the body. Tabor attempted to contact the police from the remote area but due to the poor reception, the call was unsuccessful. Tabor immediately left the area, drove back towards the main highway, and contacted the police.
Lafourche Parish Sheriff's officials were dispatched to the area to investigate. Deputy Trent Duplantis was the first to arrive at the scene. Upon inspection of the body, Duplantis observed a significant wound to the back of the victim's head. No respiratory response was noted and there were ants crawling over the body. Duplantis believed that the victim was deceased. Shortly thereafter, Acadian Ambulance arrived on the scene. Paramedic Melanie Boudreaux visually inspected the body (which included the presence of exposed brain matter) and confirmed that the victim was already deceased. She did not disturb the scene.
An autopsy revealed that the victim had been shot four times. There were three identifiable bullet entrance wounds (right lower back, left upper back, and six inches from top of head) and a graze wound (top of the head). Considering that all wounds were to the back of the victim's body, Forensic Pathologist, Susan Garcia, opined that the victim was shot from behind.
There were no eyewitnesses to the murder. The police investigation led to the development of the defendant, the victim's girlfriend, as the prime suspect in the murder. According to the victim's father, the defendant and the victim had spent the entire July 4th holiday together. The defendant was the last person seen with the victim before his death.
On July 7, 2005, Det. D. L. Mosely of the Lafourche Parish Sheriff's Office, questioned the defendant regarding the murder. The defendant initially denied any involvement in the murder. In her initial audiotaped statement, the defendant admitted that she had been in the victim's presence on July 4th, the day before his body was discovered, but denied traveling with him to the area of the crime scene and/or killing him. In a second audiotaped statement, however, the defendant admitted to shooting the victim in the desolate area near the tank batteries. She claimed she did so only to protect herself when the victim attempted to retrieve a weapon from his vehicle. The defendant accompanied the detectives to the crime scene where she reenacted the events of the night in question. This reenactment was videotaped and played for the jury at trial.
The defendant told the investigating detectives that after she left the area, she discarded the remaining bullets and hid the gun and the victim's truck keys in her attic. The gun was recovered from the attic, but the keys were never found. At trial, to contradict the state's theory that the defendant intentionally shot the victim after he threatened to expose their romantic relationship to the defendant's husband, the defense presented testimony from the defendant's husband, Henry Adams, Sr. Mr. Adams testified that although he and the defendant were legally married, they did not exist as a married couple at the time of the instant offense. They were friends. Mr. Adams claimed he was well aware of the defendant's romantic relationship with the victim.

ASSIGNMENT OF ERROR 1
In her first assignment of error, the defendant challenges the sufficiency of the state's evidence in support of her conviction. Specifically, she asserts the state failed to prove that she did not act in self-defense when she shot and killed the victim.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. C.Cr. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 requires that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. See State v. Wright, 98-0601, p. 2 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 and XXXX-XXXX (La. 11/17/00), 773 So.2d 732. This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Louisiana Revised Statute 14:30.1(A)(1) defines second-degree murder, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Thus, to support the conviction for second-degree murder the state was required to show: 1) the killing of a human being; and 2) that defendant had the specific intent to kill or inflict great bodily harm. State v. Morris, 99-3075, p. 13 (La. App. 1st Cir. 11/3/00), 770 So.2d 908, 918, writ denied, XXXX-XXXX (La. 10/12/01), 799 So.2d 496, cert. denied, 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002).
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Since specific intent is a state of mind, it need not be proved as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La. 1982).
In this case, the defendant does not deny that she intentionally shot the victim. She insists, however, that the homicide was justifiable because she acted in self-defense to avoid being raped and killed by the angry victim. The defendant asserts that her actions were solely in response to the victim's actions of attempting to retrieve the handgun from the glove compartment of his vehicle. The defendant claims she believed that she was in imminent danger of losing her life or receiving great bodily harm.
As previously noted, there were no eyewitnesses to the victim's murder. Thus, the only account of the events that immediately preceded the shooting was provided by the defendant in her taped confession, video reenactment, and trial testimony.
In her taped confession, the defendant stated that she and the victim met several years earlier when they worked together at Wal-Mart. The relationship began as friends but later developed into a romantic relationship, despite the fact that the defendant was married.
The defendant stated that she and the victim were together on the 4th of July, the day before his body was found. The couple spent the day together riding around town, visiting a park, and attending a movie. Towards the end of the day, the couple returned to the residence the victim shared with his father. After being there for a while, the defendant decided to go home. As was customary, the victim agreed to follow the defendant home. The defendant drove her black Firebird and the victim followed in his father's Nissan pickup truck. At some point thereafter, the victim took the lead and instructed the defendant to follow him. Instead of traveling towards the defendant's home, the victim turned off of the highway and onto a dark road. The defendant pulled over and told the victim that she was not comfortable driving on such a dark road. The victim instructed the defendant to continue and to follow his lights. The defendant complied.
At the end of the dark road, the victim stopped his vehicle near the tank batteries and exited. According to the defendant, the victim then told her he wanted to have sex. When the defendant refused to engage in intercourse at this location, the victim became very angry. The defendant explained that another source of the victim's anger was the fact that the defendant indicated she did not have the money that the victim had asked to bon-ow from her. According to the defendant, the angry victim then threatened to tell her husband of their relationship if she did not bring him the money.
The victim continued to "fuss" and yell profanities at the defendant as he walked towards his vehicle. Once he reached the vehicle, the victim leaned in and opened the glove box. The defendant claimed she was afraid that the victim would hurt her because she knew that the victim stored a handgun in the glove box. The defendant further stated that, although he had never been this way towards her, she was aware that the victim had been physically abusive to a former girlfriend. All of these circumstances, according to the defendant, led her to fear for her life. Before the victim could remove the gun from the glove box, the defendant shot him four times from behind. One of the gunshot wounds was fatal.
The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. Louisiana Revised Statute 14:20 provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
When the defendant in a homicide prosecution claims self-defense, the state must prove beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Williams, XXXX-XXXX, pp. 5-6 (La. App. 1st Cir. 12/28/01), 804 So.2d 932, 939, writ denied, XXXX-XXXX (La. 2/14/03), 836 So.2d 135. Louisiana Revised Statute 14:20(1) provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save him from that danger. On appeal, the relevant inquiry is whether or not, after viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found beyond a reasonable doubt that the defendant did not act in self-defense. State v. Fisher, 95-0430, p. 3 (La. App. 1st Cir. 5/10/96), 673 So.2d 721, 723, writ denied, 96-1412 (La. 11/1/96), 681 So.2d 1259.
The guilty verdict returned in this case indicates that the jury either outright rejected the defendant's self-defense claim, or concluded that the homicide was not necessary to preserve the defendant's life. Upon our review of the record in this case, viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the evidence sufficient to support the second-degree murder conviction. The appellate court is constitutionally precluded from acting as a thirteenth juror in assessing what weight to give evidence in criminal cases; this is within the discretion of the trier of fact. State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So.2d 78, 83. Herein, even if the jury believed the defendant's account of the events, they could have reasonably found that the fatal force utilized by the defendant was not reasonable under the circumstances.
By the defendant's own account of the incident reflecting that she repeatedly shot the victim as he stood near his truck with his back to her, any rational trier of fact could have reasonably concluded that the killing was not necessary to save the defendant's life. Moreover, the fact that the defendant never attempted to leave the area during the encounter, and did not leave immediately thereafter, disproves her claim that she feared for her life and was only interested in getting away from the victim. The defendant admitted in her own testimony that, instead of retreating immediately after the shooting, she went over to the victim's body and shook him to see if he would move. She then proceeded to the driver's side of the vehicle to retrieve the victim's vehicle keys before returning to her vehicle and leaving the area. We further note that the defendant's actions after she left the area, in failing to report the shooting, hiding the victim's wallet and keys, attempting to obliterate the serial number from the weapon, and contacting the victim's father pretending to be unaware of the victim's whereabouts, are also inconsistent with a theory of self-defense. Moreover, the defendant, in her taped confession and again at the trial, provided evidence of motive for the shooting. The defendant stated that the victim threatened to reveal their affair to the defendant's husband if she did not provide the money he requested. Although motive is not a required element of second-degree murder, proof of motive goes to the element of specific intent. See State v. Williams, 93-2707, p. 4 (La. 3/11/94), 633 So.2d 147, 149 (per curiam).
Based upon the aforementioned evidence, we find that the record in this case clearly demonstrates that the state carried its burden of proving beyond a reasonable doubt that the defendant was guilty of the offense of second-degree murder and that the homicide was not committed in self-defense. This assignment of error lacks merit.

ASSIGNMENT OF ERROR 2
In her second assignment of error, the defendant contends her constitutional right to face the jury with the appearance and dignity of a free person was violated when she was forced to stand trial without having her hair styled as usual and without makeup.
It is well settled that a criminal defendant may insist that he appear before jurors with all the dignity of a free man, presumed innocent until determined otherwise. State v. Anderson, 603 So.2d 776, 779 (La. App. 1st Cir. 1992). This legal precept is typically cited to prevent a criminal defendant from appearing at trial clad in clothing indicative of incarceration. Compelling a defendant to stand trial in readily identifiable prison attire over his express objection infringes upon his presumption of innocence and denies the defendant due process of law. La. Const. art. I, § 16; Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691-93, 48 L.Ed.2d 126 (1976); State v. Spellman, 562 So.2d 455, 456 (La. 1990) (per curiam). The practice is "inherently unfair," threatens "the fairness of the fact-finding process[,]" and serves "no essential state policy." Estelle v. Williams, 425 U.S. at 503-05, 96 S.Ct. at 1692-93. For this type of constitutional protection to be extended to the wearing of makeup and having hair styled in a particular fashion, the defendant must establish that failure to do so results in an infringement of her presumption of innocence and denies due process of law. The defendant herein has not made such a showing. As the state correctly asserts in its brief, the appearance of a defendant is only prejudicial when it leads the jury to conclude that the defendant is incarcerated, since knowledge of an individual's incarceration status could potentially lead to an inference of guilt. The defendant herein did not appear for trial in prison garb, handcuffs, shackles, or any other indications of incarceration. The fact that the instant defendant was not allowed to have a makeover and/or have her hair styled as she wished, a decision that was based upon safety concerns of prison officials, does not, in any way, suggest incarceration and/or guilt. There was nothing in the defendant's appearance from which the jury could automatically conclude that she was incarcerated and/or guilty. In fact, the record reflects that it was the defendant herself who informed the jury that she was incarcerated. Thus, any prejudice to the defendant's presumption of innocence was self-inflicted. This assignment of error lacks merit.

ASSIGNMENT OF ERROR 3
In her third assignment of error, the defendant contends her conviction is not valid because the verdict sheet was not signed by the jury foreperson as statutorily required. Citing La. C.Cr.P. art. 810, which provides that once a verdict has been agreed upon, "the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it[,]" the defendant argues that the verdict in this case is invalid. In support of her argument, the defendant attaches a copy of the blank verdict form contained in the record at page 501.
Contrary to the defendant's assertions, the record in this case does contain a signed verdict form. Although there is a blank form included at page 501, further review of the record reflects that there is not one, but two, copies of the signed verdict form in the record. Also, the minutes of the court clearly indicate that the verdict was in proper form and signed by "Cindy D. Hodges[,]" the foreperson.
Thus, it is clear that the defendant's assignment of error lacks merit.

ASSIGNMENT OF ERROR 4
In her fourth assignment of error, the defendant asserts the trial court's sentence of life in prison at hard labor constitutes an unconstitutionally excessive sentence. The defendant acknowledges that her trial counsel did not make a written or oral motion to reconsider sentence. She contends her attorney's failure to present any evidence at the sentencing or to file a motion for reconsideration of sentence constituted ineffective assistance of counsel resulting in her serving a constitutionally excessive life sentence.
As the defendant correctly points out, the instant record does not contain a motion to reconsider sentence nor did the defendant object to the sentence. The failure to file or make a motion to reconsider sentence precludes a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. See La. C.Cr.P. art. 881.1(E). Therefore, the defendant is barred procedurally from now having this assignment of error reviewed on appeal. State v. Duncan, 94-1563, p. 2 (La. App. 1st Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam). However, because the defendant alleges deficient performance by her trial counsel in failing to file a motion to reconsider sentence and asserts she was prejudiced by such performance, we will examine the sentence for excessiveness. See State v. Bickham, 98-1839, p. 7 (La. App. 1st Cir. 6/25/99), 739 So.2d 887, 891-92.
Whether or not defendant's counsel's assistance was so defective as to require reversal of his sentence is subject to a two-part test established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that this deficiency prejudiced the outcome of the trial. Applying this test to the issue at hand, it is clear a failure to file a motion to reconsider sentence in itself does not constitute ineffective assistance of counsel. However, if the defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different, a basis for an ineffective assistance claim may be found. State v. Felder, 2000-2887, pp. 10-11 (La. App. 1st Cir. 9/28/01), 809 So.2d 360, 370, writ denied, XXXX-XXXX (La. 10/25/02), 827 So.2d 1173. Thus, the defendant must show that but for her counsel's failure to file a motion to reconsider sentence, the mandatory life sentence would not have been imposed.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may fall within statutory limits, it may nevertheless violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. State v. Reed, 409 So.2d 266, 267 (La. 1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La. 1982). See also State v. Savario, 97-2614, p. 8 (La. App. 1st Cir. 11/6/98), 721 So.2d 1084, 1089, writ denied, 98-3032 (La. 4/1/99), 741 So.2d 1280.
Under La. R.S. 14:30.1(B), a person convicted of second-degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Courts are charged with applying a statutorily mandated punishment unless it is unconstitutional. State v. Dorthey, 623 So.2d 1276, 1278 (La. 1993). Indeed, it is incumbent on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional by "clearly and convincingly" showing that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Johnson, 97-1906, p. 8 (La. 3/4/98), 709 So.2d 672, 676.
In the instant case, in support of her argument that the sentence is excessive, the defendant cites only that this conviction was her first involvement with the law, and that the case involves a claim of self-defense with mitigating circumstances.
The Code of Criminal Procedure sets forth, in Article 894.1 items, which must be considered by the trial court before imposing sentence. Generally, the trial court need not recite the entire checklist of factors, but the record must reflect that it adequately considered the guidelines. State v. Shipp, 98-2670, p. 6 (La. App. 1st Cir. 9/24/99), 754 So.2d 1068, 1072.
The defendant's sentence of life imprisonment at hard labor is the mandatory minimum under the statute and, thus, is presumed constitutional. It is therefore incumbent upon the defendant to rebut this presumption. Based upon our review of the record in this case, we do not find that the defendant has clearly and convincingly shown that she is exceptional. The defendant made no showing of exceptional circumstances to justify a lesser sentence. The defendant's lack of criminal history alone is insufficient to warrant a downward departure from the mandatory minimum sentence. The trial court was well aware of the defendant's claim of self-defense and alleged mitigating factors at the time of sentencing.
Furthermore, although the trial court did not articulate reasons for the sentence imposed, we find that the record in this case adequately supports the life sentence. As previously stated, the defendant failed to clearly and convincingly show that because of unusual circumstances she was a victim of the legislature's failure to assign a sentence that was meaningfully tailored to her culpability, the gravity of the offense, and the circumstances of the case. See State v. Henderson, 99-1945, p. 20 (La. App. 1st Cir. 6/23/00), 762 So.2d 747, 760, writ denied, 2000-2223 (La. 6/15/01), 793 So.2d 1235. Despite her claim of self-defense, the record reflects that the defendant deliberately and repeatedly shot the victim from behind. Considering the callous disregard for life shown by this defendant, there was no reason for the trial court to deviate from the mandatory sentence of life imprisonment.
As such, we conclude the defendant did not receive ineffective assistance of counsel when her trial counsel failed to file a motion to reconsider sentence because the defendant has not shown that her sentence was excessive and would have been changed, either in the district court or on appeal, had such a motion been filed.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR 5
In this assignment of error, the defendant asserts that the trial court erred in failing to give her credit for time served on her conviction.
Louisiana Code of Criminal Procedure article 880, provides that a defendant shall receive credit for time served prior to the imposition of sentence. The 1997 amendment to Article 880 is designed to make credit for prior custody self-operating even on a silent record. Thus, there is no need for the sentencing court to reference credit for time served. State v. Roberts, XXXX-XXXX, p. 12 (La. App. 1st Cir. 5/14/99), 739 So.2d 821, 829-30. The defendant is entitled to credit for time spent in actual custody prior to imposition of the sentence for the crime for which she was convicted at trial.

ASSIGNMENT OF ERROR 6
In her sixth and final assignment of error, the defendant asks that this court examine the record for error under La. C.Cr. P. art. 920(2). This court routinely reviews the record for such error, whether or not such a request is made by a defendant. Under Article 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible errors. See State v. Price, 2005-2514, pp. 18-22 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 123-125 (en banc) (petition for cert. filed at La. Supreme Court on 1/24/07, 2007-K-130).
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
HUGHES, J., dissenting.
I respectfully dissent. Given that the unfortunate victim led the defendant to the deserted site, attempted to initiate sex, and was reaching for his gun, manslaughter was the only reasonable verdict. The defendant's post-crime behavior, while deplorable, does not change the facts of the crime.