STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


14-926


STATE OF LOUISIANA

VERSUS

ERNEST CARTER, JR.



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 141636
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Phyllis M. Keaty, Judges.


**VERDICT MODIFIED.  JUDGMENT OF CONVICTION ON FORCIBLE
RAPE ENTERED.  REMANDED FOR RESENTENCING.**


**THIBODEAUX, Chief Judge, dissents and assigns written reasons.**

**Michael Harson**
**District Attorney, 15th JDC**
**Ronald E. Dauterive**
**Assistant District Attorney**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**State of Louisiana**

**Edward John Marquet**
**Louisiana Appellant Project**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Ernest Carter, Jr.**

**SAUNDERS, Judge.**

Ernest Carter, Jr. (hereafter "Defendant") appeals his conviction of attempted aggravated rape, asserting that the evidence was insufficient to sustain a conviction and that the sentence imposed was excessive. For the following reasons, we find that the evidence is insufficient to sustain a conviction of aggravated rape, but sufficient to sustain a conviction for the lesser included offense of forcible rape; therefore, we modify the verdict, render a judgment of conviction for forcible rape, vacate the sentence imposed, and remand for sentencing in accordance with the modified judgment.

## FACTS AND PROCEDURAL HISTORY

B.P., the victim, alleges she was sexually assaulted by Defendant between 1969 and 1977. The victim was between the ages of six and fourteen at the time. Defendant was born in 1944 and was between the ages of twenty-five and thirty-three during this time period.

On May 1, 2013, Defendant was charged by grand jury indictment with one count of aggravated incest of K.C., a violation of La.R.S. 14:78.1, and one count of aggravated rape of B.P., a violation of La.R.S. 14:42.[1] Defendant entered a written plea of not guilty to the charges. Prior to trial, the State severed the charge of aggravated incest of K.C. and proceeded only as to count two, aggravated rape of B.P.

The jury returned a verdict of not guilty to the charge of aggravated rape, but unanimously found Defendant guilty of attempted aggravated rape, one of the responsive verdicts, and determined the offense occurred between September 12,

---

[1] In accordance with La.R.S. 46:1844(W), the victims' initials are used in order to protect their identity.

1975, and August 18, 1977.[2]  Subsequently, the trial court sentenced Defendant to twenty-five years at hard labor.  Defendant now appeals and alleges the evidence was insufficient for the jury to convict him of attempted aggravated rape and that the sentence imposed was excessive.

## ASSIGNMENTS OF ERROR

On appeal, Defendant asserts that:

1. when viewed in the light most favorable to the prosecution, no rational jury could have found him guilty beyond a reasonable doubt of attempted aggravated rape when the alleged misconduct occurred decades prior to it being reported and there was no physical evidence to support the allegations of misconduct; and

2. the sentence of twenty-five years at hard labor was excessive in light of his age and health.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, we have reviewed the record for errors patent on the face of the record and find none.

## STANDARD OF REVIEW

The standard of review for an insufficient evidence claim is well-settled:

> In *State v. Bryant*, 12-233 (La.10/16/12), 101 So.3d 429, the Louisiana [S]upreme [C]ourt addressed the sufficiency of the evidence claims, reiterating that the appellate review of such claims is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See State v. Captville*, 448 So.2d 676 (La.1984).  In applying the *Jackson v. Virginia* standard, the appellate court must determine that, when viewed in the light most favorable to the prosecution, the evidence is "sufficient to convince a rational trier of fact that all of the elements of the crime had been proved

---

[2] The jury was directed to determine when the offense occurred because the law regarding responsive verdicts and sentencing had changed over the years.

2

beyond a reasonable doubt." *Bryant*, 101 So.3d at 432.
*See also* La.Code Crim.P. art. 821.

*State v. Williams*, 13-497, p. 3 (La.App. 3 Cir. 11/6/13), 124 So.3d 1236, 1239, *writ denied*, 13-2774 (La. 5/16/14), 139 So.3d 1024.

## ASSIGNMENT OF ERROR NUMBER ONE

On appeal, Defendant argues that the evidence was insufficient to convict him of attempted aggravated rape. Although the State presented no physical evidence, several witnesses testified. We summarize the pertinent testimony below.

### *Testimony of B.P.*

At trial, B.P. testified that Defendant had sexual encounters with her beginning when she was six or seven years old and continuing until she was in her teens. The victim testified that she was contacted by a relative in reference to an investigation of Defendant, which motivated her to come forward about the incidents.

The victim alleged that, on two occasions, when she was six or seven years old, Defendant came into the room where she was napping and put his penis between her legs, without penetration. She testified that other children were present in the room when these incidents occurred. The victim also testified that, when she was approximately seven years old and had spent the night at Defendant's house with Defendant's daughter, Pamela Davis (hereafter "Ms. Davis"), who is B.P.'s cousin, Defendant carried B.P into the bathroom and had sex with her. Again, she testified that at least one other child was present in the room. B.P. recalled this being the first time Defendant penetrated her, although she had some difficulty recalling the chronology of events. She further testified that, when she was eight or nine years old, Defendant had sex with her in the bed

of her father's produce truck. She testified that there were adults and children in the house nearby. She explained that Ms. Davis knew of the incident in the bed of the truck and that Ms. Davis was about five years old.

The victim further alleged that, on two occasions, Defendant offered to give her driving lessons. Thereafter, Defendant took her driving, and Ms. Davis was in the back seat. On the first occasion, he pulled to the side of the road, alleging he needed to adjust the seat, pulled his penis out of his pants, and then had her sit on his lap to drive. B.P. testified that there was no penetration because she was wearing her panties and skirt. On the second occasion, when Defendant pulled over and adjusted the seat, the victim realized what was happening and refused to sit on Defendant's lap.

B.P. testified that, on several occasions, she reported the abuse to her mother, who is Defendant's sister, but that "[t]elling [her] mom wasn't enough. It wasn't getting anywhere." B.P. never reported the abuse to her father because "[she] was scared of [her] dad." B.P. explained that, after the second driving incident, she purchased a recording device and recorded Defendant confessing to the things he had done to her. She played the recording for her mother, who then called a meeting, during which this recording was played. Present at the meeting were Defendant, Defendant's wife, B.P., Ms. Davis, and B.P.'s mother. B.P. testified that Defendant's wife identified him in the recording. A second meeting was called with the pastor of their church; the pastor's wife, who was Defendant's sister; Defendant, who was a deacon at the church; Defendant's wife; B.P.; and B.P.'s mother. B.P. testified that, at the second meeting, Defendant admitted the allegations, and it was decided that Defendant would stop all sexual activities with the victim. In exchange, the victim would not tell anyone of the offenses. The recording was not presented as evidence.

4

### Testimony of Pamela Davis

Ms. Davis testified that she is three years younger than B.P. Ms. Davis testified that Defendant would "quite often" give her pornographic magazines with pictures circled in them to bring to the victim. Ms. Davis testified that B.P. had gone to get a watermelon out of her father's truck, Defendant went with her, and they were taking a long time. She thought Defendant must be waiting for her in the car. When she did not see Defendant in the car, she checked the garage. There, she witnessed Defendant and the victim in the bed of the produce truck, and it appeared to her that they were having intercourse, although she did not actually see Defendant's penis and his clothes were not off. Ms. Davis testified that she recalled being eight or nine years old and "[she] wasn't five." Ms. Davis further testified that the incident occurred in 1975 or 1976.

Ms. Davis recalled one driving incident. Ms. Davis testified that she, Defendant, and B.P. were in the front seat of the car. When they arrived in the area where B.P. would be driving, they stopped, and Defendant instructed her to get in the back seat. Ms. Davis testified that she was usually allowed to sit in the front seat with Defendant and B.P., but that on this occasion, she was directed to sit in the back seat, so the incident "stood out for [her.]" She testified that B.P. was sitting on Defendant's lap and drove for "a while." She testified that she did not see anything sexual.

Ms. Davis recalled being present at the meeting where the allegations against Defendant were discussed with Defendant, Defendant's wife, B.P., and B.P.'s mother. She recalled her mother, Defendant's wife, identifying Defendant as the person who had been recorded.

*Discussion*

Defendant argues that the evidence was insufficient to convict him of attempted aggravated rape. In brief, Defendant notes the lengthy span of time that elapsed between the alleged misconduct and the victim's testimony, the inaction by B.P.'s mother, the fact that others were nearby when the misconduct occurred, and the "unbelievable" testimony concerning the "secret pact." He further asserts that the physical evidence contradicts the testimony of the victim, although his argument focuses on the absence of physical evidence. Essentially, Defendant argues that the victim's testimony lacks credibility.

**Attempted Aggravated Rape**

"Louisiana jurisprudence has consistently held that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even if there is no physical evidence." *State v. Ware*, 11-337, p. 4 (La.App. 3 Cir. 11/23/11), 80 So.3d 593, 597, *writ denied sub nom. State ex rel. Ware v. State*, 11-1391 (La. 3/9/12), 84 So.3d 549, *and writ denied sub nom. State ex rel. Ware v. State*, 12-0046 (La. 8/22/12), 97 So.3d 358. The jury's verdict indicates that it chose to believe the testimony of B.P., even after hearing the factors that Defendant asserts makes B.P.'s testimony incredible. This court will not second-guess that credibility determination. *Ware*, 80 So.3d 593.

However, there are other issues regarding sufficiency of evidence not raised by Defendant that merit consideration. Though it is the role of the fact finder to make credibility determinations, in order to affirm a conviction on appeal, "the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt." *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371. "When the [S]tate's case lacks evidence of an essential element of the offense charged, the conviction must be set aside, no

matter how the deficiency is brought to the attention of the court." *State v. Bartie*, 12-673, p. 22 (La.App. 3 Cir. 12/5/12), 104 So.3d 735, 748, *writ denied*, 13-0039 (La. 8/30/13), 120 So.3d 256 (citing *State v. Raymo*, 419 So.2d 858 (La.1982). Moreover, Uniform Rules—Courts of Appeal, Rule 1-3 specifies that when the "interest of justice clearly requires," the appellate court may review issues not contained in assignments of error. In the interest of justice, this court will review whether the record is devoid of evidence of an essential element of the offense for which Defendant was convicted.

For Defendant to be convicted of attempted aggravated rape, the State must have proven, beyond a reasonable doubt, all elements of the crime that were in effect between September 12, 1975, and August 18, 1977, the dates for which the jury convicted Defendant. During that time, attempt was defined as:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
>
> B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
>
> C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
> . . .

La.R.S. 14:27 (as amended by 1970 La. Acts No. 471, § 1). Further, the crime of aggravated rape during the pertinent time period was defined as follows:

> Aggravated rape is a rape, heterosexual or homosexual, committed where the sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1)    Where the victim resists the act to the utmost, but whose resistance is overcome by force;
>
> (2)    Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution;
>
> (3)    Where the victim is under the age of twelve years.  Lack of knowledge of the victim's age shall not be a defense. . . .

La.R.S. 14:42 (as amended by 1975 La. Acts No. 612, § 1).  Thus, the State was required to put forth evidence that Defendant attempted to commit the crime of rape (1) by using some amount of force to overcome the victim's resistance, (2) by using threats of great and immediate bodily harm, or (3) at a time in which the victim was under the age of twelve.

The victim was born on August 18, 1963, making her twelfth birthday on August 18, 1975, just weeks before the conviction time frame.  Thus, during the relevant time period, the victim was twelve years or older, and the requirement of 14:42(3) that the victim be under the age of twelve was not met.  Because Defendant was only convicted for acts committed between September 12, 1975, and August 18, 1977, only those instances that occurred within that time period are relevant.  Three incidents potentially occurred within the conviction time frame: the incident in the bed of the truck, which Ms. Davis testified occurred in 1975 or 1976, when she was approximately eight or nine years old, making B.P. eleven or twelve years old; and the driving lesson incidents.  B.P. testified that Defendant did not threaten her during these incidents.  Although he told her not to tell anyone, this does arise to the level of threatening her with "great and immediate bodily

harm." La.R.S. 14:42 (as amended by 1975 La. Acts No. 612, § 1). Thus, the only remaining way to sustain a conviction of attempted aggravated rape is to find in the record evidence that "the victim resist[ed] the act to the utmost, but [that her] resistance [was] overcome by force." *Id.*

Regarding the incident in the bed of the truck, the victim testified that Defendant "made [her] lay down and had sex" with her. She did not testify that she resisted to the utmost or that Defendant overcame her resistance with force. Ms. Davis did not testify that she witnessed the victim resist. She conceded that B.P. was not screaming during the incident.

Regarding the driving lessons, the victim testified that, on the first occasion, when she realized Defendant had pulled his penis out of his pants, she told Defendant that she was not comfortable with what was occurring and moved off his lap. The second time, the victim was aware that Defendant had pulled his penis out of his pants and refused to sit on Defendant's lap. Neither the victim nor Ms. Davis testified that B.P.'s resistance was overcome by force.

The State did not offer any other evidence in support of each of the elements of the crime of aggravated rape or attempted aggravated rape, the offense of which Defendant was eventually convicted. B.P. was not under twelve during the relevant time frame, testified that Defendant did not threaten her, and the State did not prove that B.P. "resist[ed] the act to the utmost, but [that her] resistance [was] overcome by force." Even when viewed in a light most favorable to the prosecution, the State failed to prove Defendant committed the offense of attempted aggravated rape beyond a reasonable doubt. As such, we will consider whether a lesser included offense was proven.

**Responsive Verdicts**

An appellate court may modify the verdict instead of granting a judgment of acquittal. La.Code Crim.P. art. 821(E). "If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court . . . may modify the verdict and render a judgment of conviction on the lesser included responsive offense." *Id*. In fact, "the discharge of the defendant is neither necessary [n]or proper when the evidence does support a conviction on a lesser and included offense which was a legislatively authorized responsive verdict." *State v. Byrd*, 385 So.2d 248, 251 (La.1980). We find the evidence adduced at trial does support a conviction for the lesser included offense of forcible rape. We therefore modify the verdict and enter a judgment of conviction of forcible rape. We vacate the sentence and remand the case to the trial court for sentencing for forcible rape.

The applicable responsive verdicts to consider are those provided for in Article 814 of the Louisiana Code of Criminal Procedure at the time of trial, not those in place at the time the offense was committed. *State v. Martin*, 351 So.2d 92 (La.1977); *see also State v. Seals*, 09-1089 (La.App. 5 Cir. 12/29/11), 83 So.3d 285, *writ denied*, 12-293 (La. 10/26/12), 99 So.3d 53, *cert denied*, 133 S.Ct. 2796 (2013); *State v. Smith*, 41,048 (La.App. 2 Cir. 6/30/06), 935 So.2d 797). At the time of trial, the responsive verdicts for aggravated rape were as follows: (1) guilty, (2) guilty of attempted aggravated rape, (3) guilty of forcible rape, (4) guilty of attempted forcible rape, (5) guilty of sexual battery, (6) guilty of simple rape, (7) guilty of attempted simple rape, (8) guilty of oral sexual battery, and (9) not guilty. La.Code Crim.P. art. 814(A)(8). The trial court "on its own motion . . . shall exclude a responsive verdict . . . if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably

to permit a finding of guilty of the responsive offense." La.Code Crim.P. art. 814(C).

The record shows that the trial court stated that a specific time frame of the offense needed to be determined because the responsive verdicts differed over the years, seemingly indicating the responsive verdicts in effect at the time the offense was committed would be used. If the responsive verdicts in effect at the time the offense was committed were presented to the jury, it would constitute error. However, at trial, the jury was presented with a list of responsive verdicts including "guilty of attempted simple rape." Guilty of attempted simple rape was not a responsive verdict at the time of the offense. *See* 1975 La. Acts No. 334, § 1. Additionally, sexual battery and oral sexual battery were not presented to the jury as options, although they were responsive verdicts at the time of trial. However, neither one was considered an offense between 1975 and 1977, when the offense was committed. Application of responsive verdicts in effect at the time of trial still requires that the verdicts actually submitted to the jury be identified as offenses at the time the offense was committed. *See State v. Anderson*, 440 So.2d 205 (La.App. 3 Cir. 1983), *writ denied*, 444 So.2d 1241 (La.1984). Therefore, the jury should not have been instructed on sexual battery and oral sexual battery. From the record, we are unable to ascertain which responsive verdict list was actually given to the jury; the list in effect at the time of the offense, or the list in effect at the time of trial with two responsive verdicts excluded. Notwithstanding the discrepancy in the record, this issue is not outcome determinative. Although we are unable to ascertain whether the responsive verdict list given to the jury was the one in effect at the time of the offense or the one in effect at the time of trial, the following verdicts were actually posited to the jury:

> (1) Guilty of attempted aggravated rape,

11

(2) Guilty of forcible rape, but only if you find that the act was committed between September 12, 1975 and August 19, 1977,

(3) Guilty of attempted forcible rape, but only if you find that the act was committed between September 12, 1975 and August 19, 1977,

(4) Guilty of simple rape,

(5) Guilty of attempted simple rape, and

(6) Not guilty.

At the time of the offense, pursuant to La.R.S. 14:43.1, 1975 La. Acts No. 333, § 1[3], forcible rape was defined as "sexual intercourse without the lawful consent of the female where she is prevented from resisting the act by force or threats of physical violence wherein the victim reasonably believes her resistance to be useless."

To sustain a conviction for forcible rape, actual resistance is not required. *State v. Savario*, 97-2614 (La.App. 1 Cir. 11/6/98), 721 So.2d 1084, *writ denied*, 98-3032 (La. 4/1/99), 741 So.2d 1280. Rather, all that is necessary is that the victim be *prevented from* resisting by force or threats of physical harm to such an extent that she *reasonably believed* resistance to be futile. La.R.S. 14:43.1, 1975 La. Acts No. 333, § 1; *Savario*, 721 So.2d 1084. Only a subjective, reasonable belief is necessary. *See Savario*, 721 So.2d 1084; *See also State v. Powell,* 438 So.2d 1306, 1308 (La.App. 3rd Cir.), *writ denied*, 443 So.2d 585 (La.1983) (Stoker, J., dissenting); *State v. Probst*, 623 So.2d 79 (La.App. 1 Cir.), *writ denied*, 629 So.2d 1167 (La.1993); *State v. Burger*, 531 So.2d 1163 (La.App. 4 Cir. 1988), *determination sustained*, 541 So.2d 842 (La.1989).

---

[3] La.R.S. 14:43.1, defining the crime of forcible rape, was renumbered as La.R.S. 14:42.1.

In *Powell*, 438 So.2d 1306, a minor victim asked the defendant for a ride and he agreed to take her to a cousin's house. Instead, he brought her to a secluded area. The victim testified that the defendant slapped her, threatened to kill her, and indicated a weapon was under the seat of the vehicle. She removed her own pants, and he had sexual intercourse with her. A panel of this court concluded there was no evidence of resistance and little evidence that she believed resistance to be futile. In a strongly worded dissent, Judge Stoker explained:

> The victim in this case stated that she submitted because the defendant threatened to kill her if she did not. Although she did not state in so many words that she did not resist because she believed that resistance would not prevent the rape, that is the clear meaning of her testimony. If that meaning is not given to her testimony, it is tantamount to requiring a person threatened with rape to either be faced with a dangerous weapon or to resist to the utmost and, in either case, subject themselves to the possibility of great physical harm or death. This is resistance in the context of aggravated rape. Forcible rape requires less.

*Id.* at 1309-10.

In *State v. Wilkinson*, 00-339, p. 15 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, 766, *writ denied*, 00-3161 (La. 10/12/01), 799 So.2d 494, the fifth circuit explained that evidence presented by the state was sufficient to convict the defendant of forcible rape where the defendant:

> forcibly grabbed [the victim], threw her to the ground, pushed down her clothing, laid on top of her and penetrated her vaginally several times. [The victim], a fourteen-year-old, was frightened, weighted down by the backpack and did not know whether any action on her part would have caused him to do additional harm. She was thrown into a secluded area and could have reasonably believed that screaming would be futile.

In *Wilkinson*, the defendant did not threaten the victim and did not have a weapon.

Our own circuit has upheld a conviction for forcible rape under similar circumstances. In *State v. Schexnaider*, 03-144, p. 4 (La. App. 3 Cir. 6/4/03), 852 So.2d 450, 454, the minor victim testified that she and the defendant were sitting

on the tailgate of the defendant's truck when he "grabbed her face, kissed her and pushed her onto her back in the bed of his pick-up truck." The defendant then "g[o]t on top of her", took off her pants, and penetrated her. *Id.* She testified that the defendant did not slap her and she did not resist, but that "when she get[s] frightened, she freezes." *Id.* Eventually, "she was finally able to tell the defendant 'No,'" and that she was going to tell someone, and the defendant stopped. *Id.* Again, there was no indication that the defendant threatened the victim or had a weapon. A panel of this court upheld the conviction for forcible rape and specifically endorsed the dissent in *Powell*.

B.P. described several incidents that occurred prior to the events that serve as the basis for conviction of Defendant. She recalled the first incident to have occurred when Defendant came into the room while she was napping. B.P. testified that (emphasis added):

> A. [Defendant] came into the room, in the back way, and *he woke me up by shaking me.*
>
> *And then he put his hands over my mouth*, and he lift [sic] my dress up and put his penis in my -- between my legs. And he asked me, was it in. And I didn't know what it meant. Six or seven years, I didn't know what it meant. So I just said yes.

She further testified:

> A. He said, shh. And then, I was peeping out the back door, the hole in the back door. And he --This is--I'm sorry. This is what he said: Let me know if somebody [is] coming. So I looked out the door, and I said: Somebody's coming. Even though somebody wasn't coming. I would just say that to get him away from me.

She further explained (emphasis added):

> A. I said [his penis was in me]. There's a hole in the door by the bed where I was asleep. And I would use that as my scapegoat. And I would look in the door, and I'd say, somebody's coming. And then he'd stop. And then he'd, you know, go out the back way and leave the room.

. . . .

> A.      It only lasted -- No more than five minutes. No more than five minutes. Three minutes? Because I was uncomfortable with it, so I was -- *I was always trying to make him stop.*

B.P. testified that, between the ages of six and nine, Defendant "did a lot of fondling." She explained a plan she had made with Ms. Davis to avoid having sexual contact with Defendant:

> A.      Now, in the in-between time, I'm not saying nothing happened. He would -- He would, you know, always try to play with me. Like, one -- one night, I went [to] stay over to [sic] their house over night [sic]. They had bunk beds in the room.
>
>      And I would sleep in the top bunk. And [Ms. Davis] was sleeping in front. And she knew -- By this time, she had known. . . .
>
>      And then I -- We made a deal. We said: Okay. You sleep in the front, and I'll sleep in the back so he won't get to me. So she slept in the front, you know, in the bunk bed.
>
>      But he was like, I don't want nobody [sic] sleeping on the top bunk.

B.P. also described an incident that occurred when she was approximately seven years old when she was spending the night with Ms. Davis at Defendant's house. She testified that Ms. Davis was sleeping in front of her and that (emphasis added):

> A.      [Ms. Davis] and I were sleeping on the top bunk. And, in the middle of the night, [Defendant] came -- he came to me -- to us -- Because we both was [sic] on the bunk. He came to us. *He got me out of the bed. He woke me up, got me out of bed, and carried me into his bathroom.*

Then, she indicated that Defendant "jumped on top of [her]" and penetrated her. She testified (emphasis added): "*I was small enough to where [Defendant] picked me up off the bunk and carried me out [of] the room.*"

Finally, B.P. described the details of the incident in the back of her father's truck. She had been watching television when Defendant came to her house. He

asked for a watermelon out of B.P.'s father's truck. She testified that Defendant came to the truck shortly after her and that, while she was in the bed of the truck, Defendant "made [her] lay down, and . . . had sex with [her]." She further testified that:

> A.   He picked up my dress, just pushed my panties over to the side. He didn't pull it down. He didn't take my clothes off.
>
> Q.   Just pushed your panties to the side?
>
>    . . . .
>
> Q.   And got on top of you?
>
> A.   Yes, sir.

In her testimony, the victim further indicated that, although the she was able to "just jump[] up" after Defendant penetrated her vaginally, she was scared, hysterical, and "didn't know [what] was going to happen."

The parallels between *Wilkinson*, *Schexnaider*, and the instant matter are striking and support a finding of forcible rape. In *Schexnaider*, 852 So.2d 454, 457, the defendant "pushed her onto her back in the bed of his pick-up truck" and "got on top of her." In *Wilkinson*, 772 So.2d at 766, the defendant "pushed down [the victim's] clothing [and] laid on top of her" after he grabbed her and threw her to the ground. In the instant matter, although the victim testified that Defendant "said, lay down," she also testified "[she] didn't know [intercourse] was going to happen[]" and that Defendant "made" her lie down in the bed of the truck. Then, he pushed her panties to the side; she did not willingly remove them. Then, he "got on top of [her]" and had sex with her. Additionally, B.P. indicated she was scared, confused, and upset. She "jumped up" when it began to hurt. In slightly different words, the victims in *Schexnaider*, *Wilkinson*, and the instant matter said the same thing; an adult man made them get on their back, got on top of them, and

16

penetrated them vaginally. Although B.P. did not explicitly say that she did not resist because she believed that resistance would be futile, it is clear from B.P's testimony that when Defendant "made [her] lay down," "pushed" her panties to the side, and "got on top of [her,]" she believed it pointless to resist. Consideration of the victim's age and size supports this conclusion. B.P. was a young girl of barely twelve years old; Defendant was an adult man. Although B.P. did not directly testify to the size difference between the two, she explained that, at one point, Defendant was large enough to physically pick her up and carry her to his bathroom, where he got on top of her and had sex with her. The conclusion that B.P. thought it futile to resist is further buttressed by the history of Defendant having taken advantage of her on numerous prior occasions and her having been helpless to dissuade him on any of the prior occasions. B.P. testified that, on at least one occasion, "[Defendant] woke [her] up by shaking [her]" and "he put his hands over [her] mouth." She described how "[she] was always trying to make him stop." She explained a plan she and Ms. Davis had concocted so "he [would not] get to [her]." However, the plan proved unsuccessful, as B.P. testified that Defendant, nonetheless, "got [her] out of bed, and carried [her] into his bathroom," where he penetrated her. A jury could reasonably have concluded that the victim reasonably believed that, against the force Defendant exerted with his body as he "got on top" of B.P., resistance was useless, especially in light of her age, her size, and the extensive history between the two. Accordingly, we modify the verdict and render a judgment of conviction on the lesser included offense of forcible rape and remand for resentencing in accordance with that judgment.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant alleges that the sentence he received for his conviction of attempted aggravated rape is excessive. Because this court has modified the

verdict, entered a judgment of conviction for forcible rape, and remanded for resentencing, this assignment of error is moot.

## CONCLUSION

The evidence presented is insufficient to find Defendant guilty of attempted aggravated rape. However, the evidence is sufficient to find Defendant guilty of forcible rape; therefore, we modify the judgment of the trial court, enter a judgment of conviction of forcible rape, and remand for resentencing.

**VERDICT MODIFIED. JUDGMENT OF CONVICTION ON FORCIBLE RAPE ENTERED. REMANDED FOR RESENTENCING.**

STATE OF LOUISIANA

VERSUS

ERNEST CARTER, JR.

**THIBODEAUX, Chief Judge, dissenting.**

The State is responsible for proving each element of a crime beyond a reasonable doubt. In order to modify the verdict on appeal, the appellate court must look at the evidence in a light most favorable to the state, but still find that the evidence proves each element of the lesser included responsive offense beyond a reasonable doubt. *See State v. Byrd*, 385 So.2d 248 (La.1980); *State v. Hills*, 498 So.2d 240 (La.App. 1 Cir. 1986), *writ denied*, 503 So.2d 13 (La.1987).

The only evidence presented by the State in the current case was in regards to the watermelon truck incident. B.P., the victim, alleged that Defendant either made or told her to lie down in the truck, after which she alleged Defendant proceeded to have sex with her. Contrary to the majority's characterization of B.P.'s testimony, it is unclear as to what occurred. The majority conveniently omits the entire testimony, and only references the first part. First, she testifies, "while I was in the truck, he made me lay down, and then he had sex with me." B.P., while clarifying her answer for the examining attorney, next testifies as follows:

> Q.  Okay. So, this third time, when he came to this truck, he said, lay down, we're getting ready to have sex?
>
> A.  No, he didn't say he was getting ready to have sex.

Q. But you just said you had sex with him, right?

A. I said he had sex with me, yes. He said, lay down.

Q. And you just laid on down?

A. I just laid down.

Q. You didn't question - -

A. I didn't know - - I didn't know it was going to happen.

The victim does not testify that any force was used or threats of physical violence were made. Furthermore, she does not testify that she believed resistance would be useless. In the cases relied upon by the majority, the State presented evidence that either some physical harm came to the victim, some amount of force was used such as "grabbing her face" and "push[ing] her onto her back," or the victim testified that she believed resistance was useless or that she could not resist because "when she get frightened, she freezes." *State v. Schexnaider*, 03-144 (La.App. 3 Cir. 6/4/03), 852 So.2d 450. In this case, there is no such testimony. Further, a reasonable trier of fact could find that the victim's testimony of Defendant "pushing" her panties to the side was just a way of clarifying and describing the event for counsel. The victim testified:

Q. Okay. So you're laying down and what? He took your panties off?

A. He picked up my dress, just pushed my panties over to the side. He didn't pull it down. He didn't take my clothes off.

In *State v. Wilkinson*, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, *writ denied*, 00-3161 (La. 10/12/01), 799 So.2d 494, the victim was forcibly grabbed and thrown to the ground. That conduct is absent here.

These statements describing the truck incident do not support a finding of forcible rape beyond a reasonable doubt. Although it is true that actual resistance is not required, the evidence must support the belief that the victim did

2

not resist because she reasonably believed her resistance to be useless. No evidence was presented to demonstrate whether or not the victim believed that. Although the examining attorney continued to rephrase the victim's testimony and include that she was "hysterical" following the incident, the victim never said she was hysterical and actually testified that when she ran inside to her mom, she did not know if she was crying. She told her mother she needed to talk to her and her mother dismissed her until after bath time. The victim did not testify that she was scared, hysterical, or frightened. It is the majority's erroneous inclusion of the word "hysterical" when that testimony is nonexistent.

The victim also never conveyed to anyone that Defendant was using force, threatening bodily harm, or that she believed resistance would be useless. The victim's cousin, Pamela Davis, testified that she discussed the victim and Defendant's relationship with the victim after the watermelon truck incident. Ms. Davis testified:

> Q. And what did you tell her?
>
> A. I asked her what - - what was going on. I asked her why.
>
> Q. What did she tell you?
>
> A. She said that's just something that they did.
>
> …
>
> Q. Something that they did. Did you go any further than that - -
>
> A. No.
>
> Q. - - to tell her to explain what "they did" meant
>
> A. No. I asked her: Why were you doing that? She said: It's what he wanted to do.

Without the State presenting any evidence to show force, threats of force, that the victim was prevented from resisting by force of threats of force, or

that the victim reasonably believed her resistance would be futile, it cannot be determined that the State has carried its burden of proving every element of forcible rape beyond a reasonable doubt.  Even viewing the evidence in a light most favorable to the state, there was no evidence presented to support a finding of the above elements under such a heavy burden as "beyond a reasonable doubt."

For the foregoing reasons, I dissent.