Judgment rendered January 12, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,181-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                            Appellee

versus

FREDERICK LATHAN                              Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 222,280

Honorable Michael Nerren, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Chad Ikerd

J. SCHUYLER MARVIN                   Counsel for Appellee
District Attorney

JOHN MICHAEL LAWRENCE
DOUGLAS M. STINSON
CHRISTOPHER WARREN
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and THOMPSON, JJ.

**THOMPSON, J.**

Frederick Lathan appeals his conviction by a Bossier Parish jury and sentence to life in prison at hard labor, without the possibility of parole, probation, or suspension of sentence for first degree rape. Lathan argues that the State failed to sufficiently prove that he was guilty of first degree rape because there was insufficient evidence that the child victim resisted to the utmost, as required by the applicable statute. For the following reasons, we affirm the defendant's conviction and sentence.

## FACTS

The victim in this matter was the 14-year-old daughter of Lathan's girlfriend. Lathan entered the bedroom of the victim, M.R., while she was sleeping. M.R. testified that she was asleep in her room, lying on her stomach and did not initially hear Lathan enter her room. M.R. testified that Lathan moved the covers off of her and pulled her pants down her legs. M.R. testified that "[h]e was pushing my head down and he put his private area in mine's (*sic*)." M.R. testified that she tried to get him off of her but Lathan was still pushing her head down into her pillow. M.R. testified that she was moving her arms and "trying to get him from behind me." When asked if she tried to get out of the situation – Lathan pushing her head down into the pillow from behind her – she stated that she tried "[a]s hard as I could."

On cross-examination, when asked about this rape, M.R. testified that she could not yell out for her mother due to her head being pushed down into the pillow. M.R. testified that "she was hollering but it was muffled from the pillows." Following this first rape, Lathan told M.R. not to tell her mother or anyone else. M.R. testified that she did not go to wake her mother

up that night after the rape, because she felt that her mother would not believe her. M.R. also testified that she was "so traumatized of it I just never got up and said nothing. I just sat there and cried."

The following morning, Lathan raped M.R. a second time. M.R. testified that Lathan told her to come into his room. When she entered his room, M.R. stated that "he pushed me down on the bed and pulled my pants down again." Lathan closed the door and had loud music playing in the room. M.R. testified that Lathan would "flip the positions," physically moving her into different positions while he raped her. Lathan also made M.R. perform oral sex on him. M.R. stated that Lathan "was grabbing on me everywhere." After the second rape, she tried to find her brother but did not tell him what happened to her.

M.R. testified that Lathan raped her for a third time, that same morning. Lathan again told M.R. to come into his room. M.R. testified that he pushed her on the bed again, pulled down her pants, and raped her. M.R. testified that during the two rapes that occurred in the morning, she tried to resist Lathan by punching on his back and scratching him. M.R. testified that Lathan was holding her down, biting her, and choking her with his hands. When asked how hard she tried to resist Lathan, M.R. testified that she tried "her hardest."

After the third rape, M.R. left her house and ran to her aunt's house nearby and reported the rapes to her aunt and maternal grandmother. They immediately took her to the hospital, where a Sexual Assault Nurse Examiner ("SANE") performed a rape kit examination. DNA swabs were taken and tested, and Lathan's DNA was found on the swabs from M.R.'s external genitalia. There was prostate specific antigen ("PSA"), which is a

2

component of semen, found on the cervical swabs collected. Lathan could not be confirmed or excluded as the source of the PSA found on M.R. The SANE nurse did not note any physical evidence of bite marks on M.R. M.R. gave a statement at the Gingerbread House regarding the assaults.

At trial, Lathan testified that he never had sex with M.R., and he did not know why she would make up the allegations. M.R. admitted to lying about her grandfather molesting her when she was forced to stay with him, prior to this incident. M.R.'s mother, who married Lathan after the rape of her daughter, testified that she did not believe her daughter and believed Lathan was innocent.

The Bossier Parish jury unanimously convicted Lathan of first degree rape. The trial court sentenced Lathan to life in prison at hard labor, without the possibility of parole, probation or suspension. This appeal followed.

## DISCUSSION

Lathan asserts only one assignment of error, focused on the extent of resistance of his 14-year-old victim.

**<u>Assignment of Error</u>: The State failed to sufficiently prove that Frederick Lathan was guilty of first degree rape. The evidence did not prove that M.R. resisted to her utmost, an essential element of the crime. Instead, the state only proved the lesser offense of second degree rape.**

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13), 116 So. 3d 884. *See also* La. C. Cr. P. art. 821.

3

The appellate court does not assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Dale*, 50,195 (La. App. 2 Cir. 11/18/15), 180 So. 3d 528, *writ denied*, 15-2291 (La. 4/4/16), 190 So. 3d 1203. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797. In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. *State v. Jones,* 31,613 (La. App. 2 Cir. 4/1/99), 733 So. 2d 127*, writ denied,* 99-1185 (La. 10/1/99), 748 So. 2d 434.

On June 29, 2015, the Louisiana Legislature approved 2015 La. Acts 256, which amended and reenacted the introductory paragraphs of La. R.S. 14:42 and La. R.S. 14:42.1 to rename the crimes of "aggravated rape" and "forcible rape" to "first degree rape" and "second degree rape," respectively. La. R.S. 14:42(E) and La. R.S. 14:42.1(C) were added to describe the amendments, which changed the names of the offenses. Those amendments provide that effective August 1, 2015, any reference to the crime of aggravated rape is the same as a reference to the crime of first degree rape, and any reference to the crime of forcible rape is the same as a reference to the crime of second degree rape.

As noted above, the crime of first degree rape was statutorily embodied by the Louisiana Legislature in La. R.S. 14:42(A), when the elements of the prior crime of aggravated rape were expanded.

La. R.S. 14:42(A) provides, in pertinent part:

First degree rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

Lathan's appeal focuses on whether M.R. resisted to her utmost, as required by La. R.S. 14:42(A)(1). Lathan argues that the evidence presented at trial, when viewed under the *Jackson*, *supra*, standard, was insufficient to prove beyond a reasonable doubt that Lathan committed first degree rape. He argues that the evidence did not show that M.R. resisted to her utmost and that her resistance was thwarted by force from Lathan, as required by La. R.S. 14:42(A)(1) and (2).

Lathan likens the present matter to that of *State v. Thibeaux*, 17-0293 (La. App. 3 Cir. 10/11/17), 229 So. 3d 967, *writ denied*, 17-1909 (La. 2/25/19), 226 So. 3d 288, wherein the Third Circuit Court of Appeal found that the State failed to sufficiently prove the element of "utmost" resistance, even though there was evidence the victim tried to resist to some extent. In *Thibeaux, supra,* the victim testified that she tried to make noises and move her legs, although the defendant held her legs down. The victim was the defendant's stepdaughter, and she alleged multiple rapes over a 10-month time period. The court reduced two of the aggravated rape charges to forcible rape (now second degree rape), and the third to sexual battery. Lathan also cites *State v. Carter*, 14-926 (La. App. 3 Cir. 4/1/15), 160 So. 3d 647, *writ denied*, 15-0859 (La. 6/17/16), 192 So. 3d 770, wherein the Third

5

Circuit Court of Appeal examined the defendant's conviction for attempted aggravated rape that occurred between 1975 and 1977. The victim testified that the defendant did not threaten her, but he did tell her not to tell anyone. The court found that this was insufficient to rise to the level of threatening her with great and immediate bodily harm, and thus, the only way to sustain a conviction of attempted aggravated rape was to find evidence that the victim resisted to the utmost and her resistance was overcome by force. The court found there was no such evidence.

Lathan contends that the physical force that he employed against M.R. did not constitute a threat of great bodily harm. Lathan acknowledges that M.R. testified that he bit and choked her and held her head down into the pillow. However, Lathan argues there was no physical evidence of the biting or choking. Lathan also contends that even though M.R. testified that she resisted as hard as she could, the facts of this case do not satisfy the elements required to convict him of first degree rape. Lathan contends the State proved he committed one count of second degree rape and asks this Court to reverse his conviction, enter a conviction for second degree rape, and remand the case for a new sentencing hearing. We decline Lathan's invitation to do so.

We distinguish M.R.'s circumstances and degree of resistance to her attacker from whatever deficiency was found to exist by the Third Circuit in its analysis of the victim's utmost resistance in *Thibeaux, supra,* and decline to follow their reasoning as it relates to the facts in this case. We find Lathan's arguments unpersuasive. The record reveals that there was sufficient evidence of M.R.'s resistance to the utmost, and her resistance was overcome by Lathan's force.

6

Lathan selected a 14-year-old female victim who was much smaller than him and would not be able to overcome his size and strength. Lathan held a position of psychological authority in the household due to his relationship with M.R.'s mother, and her mother clearly prioritized that relationship over her duties as a parent to M.R.

During the first rape, Lathan physically overcame M.R. by pushing her head down into the pillow. M.R. testified that when Lathan pushed her head down into the pillow from behind her while she was lying on her stomach, she tried to move her arms in an attempt to remove Lathan from his position behind her, but she was unable to stop him. M.R. also testified that she attempted to yell out, but her voice was muffled by the pillow. During the second and third rapes, M.R. testified that Lathan pushed her down onto the bed and that he was biting and choking her while he raped her. Additionally, M.R. testified that she resisted the rapes in his bedroom by punching and scratching Lathan's back. It is clear from her testimony that during all three rapes, she was overcome by Lathan's force, despite her utmost resistance, and she was subject to Lathan's influence due to his relationship with her mother. Sadly, M.R. had no advocate in her own home or from the very adults who should have been protecting her.

M.R.'s testimony regarding Lathan's use of force against her and her resistance to the utmost contained no internal contradictions. Throughout her testimony, M.R. maintained that she tried her hardest to resist Lathan each time he raped her. Further, M.R.'s testimony contained no irreconcilable conflicts with the physical evidence presented, including evidence of Lathan's DNA on the swabs from M.R.'s external genitalia and the presence of PSA found on M.R.'s cervical swabs. M.R.'s testimony

7

alone is sufficient for the jury to find Lathan guilty beyond a reasonable doubt. The evidence of Lathan's DNA on M.R.'s genitals supports her depiction of the facts and discredits Lathan's arguments that he never had sexual intercourse with M.R. The jury had eight responsive verdict options and determined that Lathan's degree of force and M.R.'s level of resistance amounted to first degree rape. The jury had the opportunity to make credibility determinations about Lathan and M.R., and did so in rendering its verdict.

Considering these facts in a light most favorable to the prosecution, any rational trier of fact could conclude that Lathan's degree of force, and the extent to which M.R. resisted, satisfied the elements necessary for a conviction of first degree rape. Therefore, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm Lathan's conviction and sentence for first degree rape.

**AFFIRMED.**